
# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 15, 2017 Session

## IN RE ESTATE OF VIRGINIA SPEARS

### Appeal from the Probate Court for Shelby County
### No. D-16788 Karen D. Webster, Judge

_____

### No. W2016-00599-COA-R3-CV

_____

This appeal involves a challenge to certain decisions made by the probate court pursuant to a petition to ratify the decisions of the estate's executor. Although we affirm the probate court's determination that a $250,000.00 debt once owed to the decedent is now extinguished and also affirm its determination that a certain annuity policy should be transferred to the estate, we reverse the probate court's determination that insurance policies owned by the decedent at her death should be transferred to her grandchildren. Further, we reverse the trial court's order to the extent that it directs two other annuity policies to be directed to the decedent's grandchildren. These other two annuities are also assets of the estate that are subject to distribution in accordance with the decedent's will.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in Part, Reversed in Part, and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Edward T. Autry and Hannah E. Bleavins, Memphis, Tennessee, for the appellant, Marvin Ray Spears, II.

John C. Wagner, Memphis, Tennessee, for the appellee, Micah Britt Spears.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by

## Background and Procedural History

On July 8, 2013, Virginia L. Spears died in Memphis, Tennessee, at ninety years of age. She was survived by two sons, the Appellant Marvin Ray Spears, II ("Ray"), and the Appellee Micah Britt Spears ("Britt").[2] Shortly after his mother's death, on August 21, 2013, Ray filed a petition in the Shelby County Probate Court seeking to admit his mother's last will and testament to probate. A copy of the will, which was attached to Ray's petition, indicated that Ray and Britt were to share equally in Ms. Spears's residuary estate. The will also included a provision appointing Ray as the executor of Ms. Spears's estate. Following the filing of Ray's petition, on August 23, 2013, the probate court admitted the will to probate and issued him letters testamentary.

As the administration of Ms. Spears's estate progressed, Ray filed a petition on September 22, 2015, wherein he asked the probate court to ratify a number of decisions pertaining to certain estate assets. As is relevant to this appeal, the petition asserted that Britt remained in debt to the estate due to his previous execution of a $250,000.00 promissory note in Ms. Spears's favor. In addition to this debt issue, Ray's petition alerted the trial court to an issue concerning certain life insurance policies that Ms. Spears had taken out on two of Britt's children (the "Grandchildren"). Although Britt was apparently maintaining that these life insurance policies should be given to the Grandchildren, the petition noted that the policies at issue did not name a beneficiary. As such, the petition averred that the estate was the rightful owner of the policies.

On October 23, 2015, Britt filed a response to Ray's petition.[3] Therein, Britt maintained that the balance of his $250,000.00 debt had been forgiven. With respect to the insurance policies, Britt asserted that the Grandchildren should be named as owners of the policies that had been taken out on their respective lives. A hearing on these issues, and others, was later held on December 10, 2015.

Approximately two months later, on February 16, 2016, the probate court entered an order concerning the proof presented at the December 10, 2015 hearing. Although the probate court began by concluding that there was sufficient evidence to establish that a $250,000.00 debt had once been owed by Britt to his mother, the court determined that this debt had been extinguished. With respect to the insurance policies in dispute, the

---

memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The Appellant and Appellee share the same last name. To avoid confusion, we refer to them in this Opinion by their middle names, which they use to identify each other in the record and in their briefs.

[3] We observe that the Grandchildren also technically joined Britt in this response.

probate court concluded that the Grandchildren "should be named as the owner of the policy on their respective lives."

At the conclusion of its order, the probate court also dealt with certain annuities that had not been averred in the pleadings but had been raised by Ray during the December 10, 2015 hearing and fully discussed by both sides and the court. Although these annuities were listed in Ray's name and had never been owned by his mother,[4] the probate court directed Ray to transfer them to the estate and the Grandchildren.[5] This timely appeal then followed.[6]

## Issues Presented

In his brief on appeal, Ray raises four issues for our review, which we have slightly reworded as follows:

1. Whether the probate court properly determined that Ms. Spears forgave the $250,000.00 promissory note.

2. Whether the probate court properly ordered the life insurance policies to be transferred to the Grandchildren.

3. Whether the probate court properly exercised jurisdiction over the annuity policies.

4. Whether the probate court exceeded the scope of the pleadings when it issued its February 16, 2016 order.

---

[4] Nevertheless, we note that the testimony was undisputed that Ray had used his mother's funds, during her lifetime, to purchase the annuities in his own name.

[5] In summarizing Ray's testimony on the annuities, the trial court stated as follows: "He testified that the two smaller Annuities . . . were to go to [the Grandchildren] and that the larger Annuity should go into the Estate to be divided." In later disposing of the annuities, the trial court ordered that "the Annuities . . . be transfer[red] to the Estate and individuals concerned in accordance with the testimony of the Personal Representative."

[6] Although the trial court's February 16, 2016 order did not resolve all issues between the parties, the trial court subsequently directed the entry of a final judgment concerning the claims adjudicated therein, expressly finding that there was no just reason for delay.

## Standard of Review

In reviewing the trial court's factual findings, our standard of review "is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise." *Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012) (citation omitted). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citations omitted). When an issue for decision depends on the determination of the credibility of witnesses, "the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight." *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985). Indeed, "[u]nlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor[.]" *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). On appeal, we will not overturn a trial court's assessment of credibility absent clear and convincing evidence to the contrary. *Regions Bank v. Bric Constructors, LLC*, 380 S.W.3d 740, 760 (Tenn. Ct. App. 2011) (citation omitted). In contrast to our review of the trial court's findings of fact, we afford no presumption of correctness to the trial court's legal conclusions. *In re Estate of Ledford*, 419 S.W.3d 269, 277 (Tenn. Ct. App. 2013) (citation omitted).

## Discussion

We address Ray's issues in the order that he presents them in his brief on appeal. As such, we turn first to his arguments concerning the $250,000.00 debt once owed to Ms. Spears by Britt.

*$250,000.00 debt*

There is no dispute between the parties as to whether Britt was once indebted to his mother. The dispute is over whether his debt has been forgiven, or whether it remains collectible by the estate. Unsurprisingly, whereas Britt maintains that the trial court was correct in concluding that his debt was forgiven by Ms. Spears, Ray argues to the contrary.

At the December 10, 2015 hearing, each brother testified in support of their respective positions on this issue. Ray testified that he helped his mother with her financial affairs, and according to him, Britt's debt was never repaid. Britt testified otherwise and stated that his mother had forgiven him of his debt. At the heart of the brothers' dispute were two documents. The first document was a verified conservatorship petition that Britt had previously filed in the probate court when seeking

- 4 -

to establish a conservatorship for his mother. This petition, which was introduced by Ray's counsel at the hearing, was dated February 6, 2013 and listed Britt's $250,000.00 debt as being among Ms. Spears's assets. The petition's acknowledgment of Britt's debt stood in contrast to a purported release of the debt that was also introduced into evidence. The release was included on an amortization table with a beginning principal balance of $250,000.00. Britt's name was listed at the top of this table, and in the margin, the following notation was included:

Dec. 19, 2009
All Debt Paid
Virginia L Spears

According to Britt, the signature on the amortization table belonged to his mother, and he observed that it was similar to another signature belonging to his mother, which appeared on a check that had been introduced by Ray's counsel. In explaining why he had listed the debt as still in existence when he filed the petition for conservatorship in 2013, Britt testified that he had been advised by counsel that, unless he had a document releasing the debt, he needed to list it. Although Britt did not believe the debt to be valid at that time, he followed his counsel's advice because he could not find any paper evidencing the debt's release. He apparently did not know of the release dated December 19, 2009 when he filed the conservatorship petition,[7] but Britt was convinced that the debt had been forgiven by 2013. In fact, when asked about his knowledge of the release, he stated as follows: "Somewhere around 2009 . . . my mother stated . . . she was going to relieve me of that debt and give my brother the house. That was a fair trade."

In support of his position that the debt had not been forgiven, Ray testified that he would have known if his mother had prepared the amortization table and release. According to him, he assisted his mother with nearly all of her financial affairs. Ray also testified that he did not recognize the signature on the purported release dated December 19, 2009. In contrast to Britt's position that the debt had been extinguished by that date, Ray testified that a balance of $200,000.00 still remained.

In determining that Britt's debt was not an asset of the estate, the trial court held as follows: "The Court . . . finds that considering all of the evidence, the testimony and the

---

[7] Britt's wife apparently discovered the release's existence later within an envelope containing Britt's father's military records.

credibility of the witnesses, that Virginia Spears did sign the release of debt as appears on [the amortization table] and that the debt has been extinguished." As is apparent from the text of the trial court's order, credibility of the witnesses played a factor in the trial court's finding regarding the extinguishment of the $250,000.00 debt. A trial court's assessment of witness credibility is entitled to great weight on appeal and should only be overturned on account of clear and convincing evidence. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citations omitted). In this case, in view of the trial court's specific findings on credibility, we cannot conclude that the evidence preponderates against the trial court's finding that Ms. Spears forgave the debt.

*Insurance policies*

We turn next to the trial court's decision regarding two insurance policies owned by Ms. Spears at her death. These policies insure the lives of the Grandchildren, who are Ray's niece and nephew. One policy insures Ray's niece; the other policy insures Ray's nephew. Notably, however, no beneficiary is listed on either policy account. Although the trial court ultimately ordered that each of the Grandchildren be named as the owner of the particular insurance policy on which they were the insured, we agree with Ray that this was error. There is no legal basis for such a result, and we note that Britt's counsel conceded at oral argument that he could not give any authority as to why this should occur. Given the absence of any designated beneficiaries on the insurance policies at Ms. Spears's death, we hold that the policies are subject to probate and are to be distributed in accordance with the terms of the will. *See Skovron v. Third Nat'l Bank in Nashville*, 509 S.W.2d 497, 510 (Tenn. Ct. App. 1973) (noting that assets owned in a person's sole and separate name are subject to testamentary power). Specifically, the insurance policies are subject to distribution as part of the residuary estate, which is to be divided equally between Ray and Britt. We therefore reverse the trial court's decision to name the Grandchildren as the owners of the policies and remand the case for the entry of an order directing that the policies be surrendered and their cash value be paid into the estate and distributed as part of the residuary estate.

*Annuities*

Another source of dissension between the parties is the trial court's handling of certain annuities that were discussed at the December 10, 2015 hearing. From our review of the transcript, these annuities, all of which are owned in Ray's name, were first brought up at the December 10 hearing by Ray's counsel. In total, evidence of three annuities was presented before the trial court. The first two annuities each had an accumulated value of over $21,000.00 as of October 5, 2015. The third annuity had an accumulated value of over $126,000.00 as of November 23, 2015.

Ray's direct testimony established several points concerning these annuities. With respect to the first two annuities, Ray stated that he was "handling it for mother" and that the annuities would "become part of" or be put into the estate. Moreover, when discussing the third annuity specifically, Ray testified that it had been funded from his mother's money. Like the other annuities, he stated that he was going to "[h]and it over to the estate." When Ray's trial counsel entered one of the annuity statements into evidence, he specifically remarked as follows: "I'm going to ask that be entered as [an] exhibit . . . just for the purpose is that we are going to show that as an additional asset of the estate."

On cross-examination, Ray was questioned further about the annuities, as evidenced by the following exchange:

Q: Now, Mr. Spears, you said you've handled this estate since it has been opened and taken care of all of the assets; correct?

A: That is right.

Q: These annuities have been entered as exhibits 6 and -- two annuities in 6 and one in exhibit 7. They are all in your name, aren't they, sir?

A: Yes, they are.

Q: And you've testified that these are all assets of the estate?

A: Yes, they are.

* * * *

Q: Okay. Now, all of these annuities existed at the time of her death?

A: Yes.

Q: They all existed at the time you opened the estate?

A: Yes.

Q: And prior to us filing a response saying that there were properties that hadn't been disclosed to the estate, you had never listed these as part of the estate, had you, sir?

- 7 -

A: I don't know.

* * * *

Q: In fact, you had not, had you, sir?

A: I don't know.

Q: Oh, are you saying your attorney had these but didn't list these as assets?

A: Yes.

Following this exchange, Britt's counsel represented to the court that he did not believe Ray's counsel knew about the annuity assets before the filing of Britt's October 23, 2015 response. Ray then testified that he gave evidence of the annuities to his counsel sometime in November 2015. When Britt's counsel inquired into why Ray, the executor of the estate, had not advised his attorney that there were additional assets of the estate until November 2015, Ray's counsel objected:

> I'm going to object, Your Honor, in that Counsel is saying that these are additional assets of the estate. However, on the face of them, and the testimony is that he -- *the witness is going to treat them as part of the estate*, but they are really not part of the estate because they are in his name dated as of 2010, well before the death, before any of this happened. *And the only statements I've heard is that he is going to treat them as part of the estate as we move forward,* but they are not literally part of the estate because they are in his name.

(emphasis added). Britt's counsel responded by noting that Ray's testimony established that the annuities had been funded from Ms. Spears's bank account and that they were part of the estate. The objection of Ray's counsel was subsequently overruled by the trial court.

Although the trial court eventually ordered Ray to transfer the annuities to the estate and the Grandchildren, Ray now asserts that this was error. In particular, he observes that he owns the annuities and that no party ever made a specific claim for relief asserting that his ownership is improper. Respectfully, we disagree that the trial court was without jurisdiction to dispose of the annuities mentioned at the December 10, 2015 hearing. In addition to his testimony that the annuities had been funded by his mother's money and that he was handling the annuities for her, Ray, the executor of the estate,

specifically represented under oath that the annuities were assets of the estate. He did not simply state that he intended to place the annuities into the estate. He also testified, without equivocation, that the annuities were assets of the estate, stating as follows: "Yes, they are." We find no error in the trial court's decision to deal with the annuities given Ray's clear testimony on the subject.

In reaching our conclusion on this issue, we also reject Ray's suggestion that the trial court acknowledged that the annuities were outside of the scope of the December 10, 2015 hearing. Although we agree that the trial court expressed reluctance to deal with certain matters that were inquired into during the course of that hearing, we disagree that the trial court affirmatively disclaimed a willingness or ability to exercise jurisdiction over the annuities. As we interpret the trial court's transcript, the trial court simply expressed an unwillingness to allow Britt's attorney to pursue substantive claims related to allegations that Ray had mishandled certain First Tennessee bank accounts belonging to Ms. Spears. The trial court indicated that such issues were not before it, at which time Britt's counsel stated that he was only inquiring into the First Tennessee accounts to show that Ray should not be appointed as the owner of the insurance policies.

Although we are of the opinion that the trial court did not err in dealing with assets that Ray testified belonged to the estate, we reverse its decision to the extent that not all of the annuities were directed to be transferred to the estate. As we interpret the trial court's order, Ray was directed to transfer the two smaller annuities to the Grandchildren. Indeed, when disposing of the annuities, the trial court ordered that "the Annuities . . . be transfer[red] to the Estate *and individuals* concerned in accordance with the testimony of the Personal Representative." (emphasis added.) Previously in its order, the trial court had remarked that Ray "testified that the two smaller Annuities . . . were to go to [the Grandchildren]." Although it may have perhaps been Ms. Spears's intention for the Grandchildren to get the two smaller annuities that Ray admits he was handling for her, that intention is not reflected in her will. In light of Ray's admission that all three annuities are general estate assets, they are properly subject to distribution as part of the residuary estate.

*Whether the trial court exceeded the scope of the pleadings in relying on improper testimony*

The final issue raised by Ray generally posits that the trial court went beyond the scope of the pleadings in connection with its February 16, 2016 order. Although the specific substance of Ray's grievance is not readily apparent from his phrasing of this issue in the "Statement of the Issues" section of his brief, the argument section of his brief makes clear that his concern is one related to the evidence considered at the

December 10, 2015 hearing. Namely, Ray claims that the trial court improperly considered evidence related to his character.[8]

Ray makes this assertion to call into question the validity of the trial court's decisions regarding the life insurance policies, the annuities, and the extinguishment of the $250,000.00 debt. With that said, the majority of his argument is devoted to the trial court's decision with respect to the insurance policies. According to Ray, because the successor owner of the insurance policies is a legal question, the trial court's consideration of his "bad character" should not have affected the disposition of those policies. It is not readily clear to us whether the "bad character" evidence complained about by Ray was a factor in the trial court's decision to order that the insurance policies be transferred to the Grandchildren. In fact, in dealing with the insurance policies, the trial court simply stated as follows:

> The Court finds that after inquiry of the respective attorneys, that there is no controlling language in the insurance contracts at issue nor in the law on the issue of ownership of policies with no designated owner and no designated beneficiary such as the two insurance policies on [the Grandchildren]. That it is the Court's Opinion that each of [the Grandchildren] should be named as the owner of the policy on their respective lives.

However, we agree with Ray that the question related to the insurance policies is ultimately a legal one, and as we have already explained, we are of the opinion that the trial court erred in its handling of the insurance policies. As such, Ray's asserted error is ultimately of no moment. Again, we agree with Ray that the trial court erred in ordering him to transfer the insurance policies to the Grandchildren.

Ray's asserted error is also of no consequence inasmuch as it concerns the trial court's disposition of the annuities. As we have already explained, Ray's own testimony acknowledged that the annuities are assets of the estate. Given his unequivocal statements on that issue, we conclude that Ray's complaints about the "bad character" evidence allegedly considered by the trial court are irrelevant.

Ray also complains that the trial court "based its decision[] on the $250,000 loan . . . on evidence improperly admitted." This argument is itself largely undeveloped, as the primary thrust of Ray's position throughout his brief is that "bad character" evidence improperly influenced the legal determination regarding the insurance policies and/or

---

[8] Ray also complains about one instance in which he claims that he was improperly prevented from refuting the "bad character" evidence that was alleged against him.

disposition of the annuities. Inasmuch as Ray is complaining about the admission of certain evidence, however, we note that the cited evidence about which he complains was never objected to in the trial court. In fact, in one instance, his brief cites to testimony that was solicited by his own counsel. Further, although Ray specifically complains about a certain police incident report that was entered into evidence, we observe that his trial counsel mounted no opposition to this proof. In fact, Ray's trial counsel expressly stated as follows after the incident report was admitted as an exhibit: "I'm not going to object to the police report." Therefore, although Ray suggests that the proffered "bad character" evidence was "overly prejudicial to . . . his credibility," any objection to the admission of the evidence was waived.[9] *See In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993) (citation omitted) (noting that absent a timely objection to the introduction of evidence, the issue is waived on appeal).

## Conclusion

In light of the foregoing, the trial court's February 16, 2016 order is hereby affirmed in part and reversed in part. Costs of this appeal are assessed one-half against the Appellee, Micah Britt Spears, and one-half against the Appellant, Marvin Ray Spears, II, and his surety, for all of which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[9] Although Ray also complains about a specific instance in which the trial court restricted him from testifying, the argument section of his brief on this issue only connects this alleged error with the trial court's handling of the insurance policies. Again, we agree with Ray that the trial court erred in how it handled the insurance policies.