IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 17, 2018



## JERMAINE REESE v. THE ESTATE OF STANLEY CUTSHAW, ET AL.

**Appeal from the Chancery Court for Greene County**
**No. 20150444       Douglas T. Jenkins, Chancellor**

_____

### No. E2017-01923-COA-R3-CV
_____

This appeal concerns a debt owed to the plaintiff by her deceased husband. The trial court awarded the plaintiff certain secured real property that she argues does not provide her the full value of her claim against the decedent. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C. J., joined, and CHARLES D. SUSANO, JR, J., filed separate concurring opinion.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellant, Jermaine Reese.

Denise S. Terry, Morristown, Tennessee, for the appellees, Estate of Stanley L. Cutshaw, The Stanley L. Cutshaw Revocable Living Trust, Donny Cutshaw, Elaine Looney, and Kathy Boyd.

**OPINION**

**I. BACKGROUND**

Stanley Cutshaw ("Husband") and Jermaine Reese ("Wife") were married on May 3, 2004. For the duration of their marriage, they lived in separate residences and maintained separate bank accounts. On December 9, 2005, Wife loaned $30,000 to Husband. Wife required Husband to secure the debt by executing a promissory note and a deed of trust covering two tracts of real property ("the Property"), with one tract containing a small house. The promissory note called for repayment of the $30,000 loan

in 48 monthly installments, with a 3% annual interest rate. It contained an acceleration clause. The deed of trust provided notice that, in the event of a default, the trustee was empowered to conduct a non-judicial foreclosure via public auction. Further, the deed of trust also contained a due-on-sale clause. Over the nine-year period between the date of the promissory note/deed of trust and Husband's death, Husband never made a payment on the promissory note. However, there is no indication in the record that Wife ever requested payment on the note or threatened foreclosure or acceleration.

About two years after the loan was made, Wife informed Husband that she had created a revocable living trust as part of her estate planning. Husband chose to create his own revocable living trust, and on September 13, 2007, an attorney assisted Husband in creating one. The trust agreement contains a schedule of real property conveyed to the trust that includes the Property at issue. On May 8, 2008, Husband recorded a limited warranty deed conveying the subject Property to the Stanley L. Cutshaw Revocable Living Trust.[1] On February 13, 2014, Husband died. An estate was not opened for probate.

According to Appellees, about eight months after their father's death, Wife told one of Husband's daughters, Kathy Boyd, that "she was wanting to go on a cruise." Ms. Boyd and her sister, Elaine Looney,[2] decided to deed the Property to Wife because they thought she might "need or want the money for the [cruise] and to satisfy the debt their father owed" Wife.[3] On October 1, 2014, Ms. Boyd and Ms. Looney delivered a deed to the Property to Wife. At first, Wife seemed pleased and accepted the Property. Later that day, however, Wife and her son inspected the Property and decided to "reject" the deed because they concluded that the Property's value was not sufficient to "cover the debt." Wife believed that the Property was "not in a very good place" because it was "way out in the country." She observed that she "didn't think that [she] was capable of handling [the property] with strokes and [her] age." Contrary to Wife's assertion, Ms. Boyd claims that Wife told her that "the debt was forgiven and she didn't want anything."

Between the acceptance of the deed and October 21 (the date the release was signed), Wife called Ms. Boyd expressing her desire to go to a lawyer's office to sign the "release." Ms. Looney contacted an attorney and explained that Wife "didn't want the Property" and inquired "[w]hat needs to be done?" Ms. Looney was told that Wife would need "to come down and sign the papers." Subsequently, Wife, accompanied by Ms. Boyd, went to the lawyer's office to have the Property "released back to the children." Due to an apparent miscommunication, the document that was ultimately prepared released Wife's deed of trust on the property. Wife, who did not read the document

---

[1] Nothing in the record indicates that Wife objected to this conveyance and the validity of that conveyance has not been raised as an issue at any time during this litigation.

[2] The sisters administer the trust, which still owns real estate.

[3] The sisters admitted that Husband never paid Wife.

before signing it, "thought [that she] was signing . . . the deed back over to [the children]." She promptly recorded the release with the Greene County Register of Deeds.

According to Wife, Appellees approached her with the assurance that the indebtedness would be repaid but requested that she execute a release of the deed of trust so that the Property could be sold. Wife contends that she relied on those representations and signed the release of the deed of trust. She asserts that the release contained language that indicated the indebtedness had been paid in full when it was still owed.

The law office manager testified at trial that she did not recall explaining to Wife that the release stated "that she is not owed any money," because she "didn't know [Wife] hadn't been paid." The manager related that the release contained standard language and had not been specially prepared. The lawyer in the office testified that "when someone calls our office and asks for a Release, we do a standard Release[.] . . . [I]t's very rare for someone to come and do a Release if they haven't been paid."

It appears that the events surrounding the Property have adversely impacted the relationship between Wife and Husband's children. Wife testified that Husband's children had misinterpreted her statements. According to Wife, she was "not expecting to collect the debt from [the children] individually," but she never meant for them to think "that [she] wasn't expecting to be paid." Wife expected the money plus interest to come from the trust assets.

This lawsuit was filed against Wife's three stepchildren, both individually and in their capacities as Trustees of the Stanley L. Cutshaw Revocable Trust. The "Estate of Stanley L. Cutshaw" was also named as a defendant, despite no estate ever being opened for probate. Husband's children were sued also as "heirs-at-law."

At the bench trial, held on February 15, 2017, Wife argued that the release should be voided on the basis of mutual mistake. The court held as follows:

> I hear these facts and my mind takes off sort of in a different direction than either one of the legal theories that I've heard today, but here's the bottom line of what I think. I think that [Appellees] after their Father passed away were aware of this Deed, Deed of Trust and Note and they wanted to make things right with their step-mom[.] [S]o they had a deed prepared and presented it to her, for which she accepted[.] … [She] then went out with her keys to check out her new property and didn't like [it] when she got there with the help of her son[.] . . . [H]er son sent her back to tell [Appellees] that they needed to do something different. And so, at that point . . . it's interesting in my mind how that Release got

done and why it got done, but the bottom line is [Wife] was involved in getting done[.] . . . [A]fter the Release was done [Appellees] will never sa[y] again [they] owe you money. They consistently said that that ended it in their minds. So, I didn't see anything to the contrary. They do say the debt wasn't paid and it wasn't; if anything, it was forgiven via the language of that Release. So, what I'm gonna do might make everybody mad, but here's what I think you oughta do . . . number one, I think the Release is a valid release in so far as it fulfills the intention of the parties, and that's to take the lien off that property. That's what both sides seem to have said that they were gonna do. Now, after the Release was done, [Appellees] consistently didn't think they owed the money from that point on, but prior to that they most certainly thought they owed the money and they offered her a deed, which she accepted. Now, the parties both say this wasn't paid, so the delivery of that deed from [Appellees] to [Wife] was a valid transaction and couldn't be undone with just taking the Deed back and unaccepting it. Uh, I think that transaction is valid between the parties, [and] the trustees of the Trust are ordered to convey, re-convey by deed that property over to [Wife] and then that may leave part of the underlying obligation unpaid. But, I find that at this point the underlying obligation is uncollectible because [Husband] has been deceased for over a year and his estate was never opened, [and] . . . there was not a claim filed against his estate enforcing this debt within 12 months within the date of his death. Therefore, by statute the debt is now uncollectible. The lien was released and even [Wife] says she meant to release the lien. She just said she didn't mean to forgive the debt when she did it, but the problem is that rendered it an unsecured debt and the ability for her to collect that ended one year, on the one-year anniversary of [Husband's] death. Now, she was his widow, she said she inquired about his estate, but actually she had the legal ability and the priority right to open his estate, so that a claim could be filed against it[.] . . . [T]hat failure to act if in fact it even is goes in her column. I have granted some relief under the Petition[;] the remainder of the Petition is dismissed and the court costs should be paid by the parties equally. Everybody should [bear] their own attorney's fees . . . ."

- 4 -

Wife filed this timely appeal.


## II.  ISSUES

Wife raises the following issues on appeal:

> 1.  Where a decedent's estate is not opened but a creditor of the estate has secured indebtedness, does the executor have a duty to pay secured debts where sufficient assets are available.[4]
>
> 2.  Does the executor/trustee have a duty to deal with a widow in "good faith" and pay the widow the full amount of a secured indebtedness.
>
> 3.  May a court decide a case upon a defense not pled.

Appellees raise the following issues:

> 1.  Whether Wife waived consideration of all issues by failing to comply with requirements of both Rule 6 of the Rules of the Court of Appeals of Tennessee and Rule 27(a) of the Tennessee Rules of Appellate Procedure.
>
> 2.  Whether Wife waived the issue of the applicability of the doctrine of exoneration by failing to raise the issue in the trial court.
>
> 3.  Whether Wife waived the issue of whether the trial court erred in holding that her claim was barred by the applicable statute of limitations by failing to object to the trial court's decision upon the ground that it was based upon an affirmative defense not pled in accordance with Rule 8.03.

---

[4] As to this issue, we note that the legislature has afforded protection to a creditor faced with a claim against an unopened estate. Section 30-1-301 of the Tennessee Code provides: "The chancery court of the county in which any person resided at the time of the decedent's death, or in which the decedent's estate, goods, and chattels or effects were at the time of the decedent's death, may appoint an administrator when six (6) months shall have elapsed from the death, and no person will apply or can be procured to administer on the decedent's estate." Tenn. Code Ann. § 30-1-301.

## III. STANDARD OF REVIEW

Appellate review of non-jury cases is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). Conclusions of law, however, are reviewed under a pure de novo standard, according no deference to those made by the lower court. *Rutherford Cnty. v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Jones v. Garrett*, 92 S.W. 3d 835, 838 (Tenn. 2002).

## IV. DISCUSSION

### A.

We have given copious review to the record and pleadings before us. The inapplicability of the doctrine of exoneration to the facts of this case is clear. "Under the common law doctrine of exoneration, an heir or devisee is generally entitled to have encumbrances upon real estate paid by the estate's personalty unless, in the devisee's case, the will directs otherwise." *In re Estate of Vincent*, 98 S.W.3d 146, 148 (Tenn. 2003) (internal citations omitted) (refusing to extend the doctrine of exoneration so that the surviving tenant in a joint tenancy would not be entitled to compel the executor of the deceased tenant's estate to pay encumbrances on the real estate because "property passing through probate and property passing through non-probate means are not analogous in terms of their benefits and obligations to the estate."). Under the facts of this case, Wife is not an heir or devisee of Husband's but rather his creditor. The cases cited by Wife discuss the application of exoneration to real property passing through probate – not in the context of encumbered real property held by a trust. Additionally, any language of the trust does not apply because Husband borrowed the money in this matter before the trust came into existence and this is not a debt of the trust. Further, none of the Appellees are executors because Husband's estate was never opened for probate. None of the cases cited by Wife establish that a trustee has a "good faith" duty to comply with the demands of a creditor of the settlor, regardless of whether a particular creditor is the settlor's widow.

### B.

Rule 8.03 of the Tennessee Rules of Civil Procedure requires as follows: "In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . statute of limitations . . . and any other matter constituting an affirmative defense." Appellees contend that Wife waived the issue of the

trial court deciding the matter with a statute of limitations ruling by failing to argue that Appellees had not pled that affirmative defense.

In *Fryer v. Conservatorship of Fryer*, like this case, no issue about the statute of limitations was ever raised as an affirmative defense in a pleading or by motion at trial. The statute of limitations was first mentioned in the trial court's memorandum opinion, when "[t]he court, on its own, thought the statute of limitations was applicable to the case." *Id.,* No. E2009-01009-COA-R3-CV, 2010 WL 3893765, at *6 (Tenn. Ct. App. Oct. 5, 2010). In *Fryer*, we noted that

> Husband had no notice of the statute of limitations as a potential issue. . . . Husband never had the opportunity to rebut the statute of limitations as a defense. . . . Because the statute of limitations was raised so late in this case, we find that it resulted in prejudice to Husband. The trial court erred in applying the statute of limitations, sua sponte . . . .

*Id.* In the present case, Wife lacked any notice of the statute of limitations as a potential issue.

If an estate had been opened in this case, Tennessee Code Annotated section 30–2–310(a) requires that claims against it be filed within twelve months of the date of the decedent's passing. Tenn. Code Ann. § 30–2–310(a); *see also In re Estate of Ledford*, 419 S.W.3d 269, 279 (Tenn. Ct. App. 2013) ("Twelve months after [decedent's] passing, all claims were forever barred."). Tennessee Code Annotated section 30-2-310 specifically provides:

> All claims and demands not filed with the probate court clerk, as required by the provisions §§ 30-2-302 – 30-2-309, or if later, in which suit shall not have been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred.

Tenn. Code Ann. § 30-2-310(a). Additionally, Tennessee Code Annotated section 30-2-3-307(a)(1)(B) expressly states that a "creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death." Regarding section 30-2-307(a)(1)(B), the Tennessee Supreme Court indicated:

> Tenn. Code Ann. § 30-2-307(a)(1)(B) provides for an absolute one year limit on the filing of claims against the estate, and this limitations period applies whether the creditor has received proper notice or no notice at all. Thus, [the creditor's] claim was required to be filed within a year of [the

decedent's] death.

*In re Estate of Jenkins v. Guyton*, 912 S.W.2d 134, 138 n. 3 (Tenn. 1995).

In announcing its findings at the conclusion of the trial, the court stated in relevant part: "I find at this point the underlying obligation [the $30,000] is uncollectible because [Husband] has been deceased for over a year and his estate was never opened . . . . [T]here was not a claim filed against his estate enforcing this debt within 12 months within the date of his death." The trial court noted that Wife, as Husband's widow, "had the legal ability and the priority right to open his estate, so that a claim could be filed against it." Because Wife did not open the estate, the trial court held that "by statute the debt is now uncollectible." Thus, the trial court observed, as our supreme court instructed, that Wife's claim against Husband, which was not filed within twelve months from the date of Husband's death, was forever barred. *See Bowden v. Ward*, 27 S.W.3d 913, 918-19 (Tenn. 2000); *In re Estate of Jenkins*, 912 S.W.2d at 138 n. 3; *In re Estate of Luck*, No. W2004-01554-COA-R3-CV, 2005 WL 1356448, at *8 (Tenn. Ct. App. Jun. 7, 2005).

At the hearing, Wife's counsel responded to the trial court as follows: "I would respectfully suggest that we have three years on Trusts to file . . . [and] I would respectfully ask the Court's reconsideration." Counsel stated:

> I understand the Court's analysis but I respectfully ask the Court to go back and reconsider the effect of the Trust. The Trust of course avoids . . . any need to open a probate estate and I don't believe that there is any basis for the one year limitations period to apply as against property that was secured but then [Husband] transferred in to the Trust. Her lien and the note were preexisting . . . . I would respectfully suggest that we have three years on Trusts to file against those if there are any issues under the Trust law.

The trial court disagreed on the basis that the obligation was Husband's "own obligation," and that Husband "didn't sign the obligation as a Trustee or as a beneficiary of the Trust . . . . He didn't bind the Trust in any way shape or form or the Trustees." In the judgment, the court held:

> [T]he Release that is the subject of this action is a valid release, and said release removes the lien from the subject real property. Also, because the Petitioner, [Wife] did not open decedent's probate estate or file a claim against the estate within one year of decedent's death, the Court finds that any remaining unsecured debt is now uncollectible, and

the Court finds that the debt is uncollectible even though decedent conveyed all of his assets to a revocable living trust after the date of the promissory note and the deed of trust. . . . Trustees acknowledged that a debt was due to [Wife], and that they delivered a deed to [Wife] for the property which secured said debt, and therefore, that action by the Trustees indicates an intention to satisfy the indebtedness, such that the Trustees should not now be allowed to rescind the delivery of the deed, and the Trustees of the Stanley L. Cutshaw Revocable Living Trust are hereby ordered to deed the subject real property to [Wife]. . . .

Wife believed the only issue at trial was the validity of the release. She asserted that the issue before the trial court was whether the release of the debt was based on a mutual mistake. We acknowledge that Wife was blindsided by the trial court raising the statute of limitations issue. However, upon reviewing the applicable statutory language and decisions previously rendered by the courts of this state, we must conclude that Wife's claim concerning Husband's debt, when not filed within one year of his death, regardless of whether the estate was opened or not, is barred.[5] Any error on the part of the trial court in raising this issue sua sponte was harmless.


# V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Jermaine Reese.


_____
JOHN W. MCCLARTY, JUDGE

---

[5] The section comments to Tennessee Code Annotated section 35-15-505(a)(6) "recognize[] that a revocable trust is usually employed as a will substitute. As such, the trust assets, following the death of the settlor, should be subject to the settlor's debts and other charges. However, . . . the assets of the settlor's probate estate must normally first be exhausted before the assets of the revocable trust can be reached. . . .This section clarifies that *claims against revocable trusts are subject to the same time limitations*, and are subject to the same order of priority among creditors as are imposed on claims against probate estates. . . ." Emphasis added.